# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                      |     |                       |
| ------------------------------------ | --- | --------------------- |
| LIMNIA, INC.,                        | )   |                       |
|                                      | )   |                       |
|     Plaintiff,   | )   |                       |
|                                      | )   |                       |
|     v.           | )   | No. 1:13-cv-37 (KBJ)  |
|                                      | )   |                       |
| U.S. DEPARTMENT OF ENERGY, *et al.*, | )   |                       |
|                                      | )   |                       |
|     Defendants.  | )   |                       |
|                                      | )   |                       |

## MEMORANDUM OPINION

In 2009, Plaintiff Limnia, Inc. ("Limnia" or "Plaintiff"), a manufacturer of battery systems for electric vehicles, applied for a loan from the Department of Energy ("DOE") through a congressionally-authorized clean energy program known as the Loan Guarantee Program ("LG Program"). Limnia submitted its program application to DOE, but it did not transmit the application fee that DOE's regulations prescribed. *See* 10 C.F.R. § 609.6(b)(2) (2009). DOE summarily rejected Limnia's loan application on this basis, after which Limnia filed the instant lawsuit against DOE and its Secretary (collectively, "Defendants") under the Administrative Procedure Act, 5 U.S.C. § 706, claiming that DOE had arbitrarily refused to honor a supposedly pre-existing oral agreement to waive the application fee (a waiver that DOE says did not occur), and that the agency had also failed to explain why it would not honor the oral fee waiver. (*See* Am. Compl., ECF No. 26, ¶¶ 167–71; Pl. Limnia, Inc.'s Opp'n to Defs.' Mot. for Partial Summ. J. & Cross-Mot. for Partial Summ. J. or for Disc. ("Pl.'s Mot."), ECF No.

74, at 6.)[1] Limnia combined its claims against DOE with those of another disgruntled loan applicant; the gravamen of their complaint, which also included alleged violations of Limnia's constitutional rights to due process and equal protection, was that various determinations that DOE had made regarding the processing and merits of their loan applications were infected with political "cronyism" and demonstrated an abuse of power. (*See, e.g.*, Am. Compl. ¶¶ 83–113.)

As of July 21, 2016, this Court had (1) dismissed the other plaintiff and many of the complaint's claims; (2) voluntarily remanded Limnia's remaining APA claims back to the agency (over Limnia's objection) for reconsideration of Limnia's loan application; and (3) closed Limina's case due to its failure to resubmit its application materials to the agency pursuant to the voluntary remand. Limnia then appealed, and the D.C. Circuit determined that this Court's voluntary remand order was improper, and as relevant here, ordered this Court to "resolve Limnia's APA challenge to the apparently denied 2009 loan applications." *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 388 (D.C. Cir. 2017). The panel suggested that this Court could avoid addressing the merits of Limnia's APA challenge by voluntarily remanding the matter to the agency, but only if the Court "first resolve[s] whether Limnia has to pay the application fee associated with the 2009 Loan Guarantee Program application, or whether that fee was waived by the Department." *Id.* Of course, answering *that* question under the circumstances presented actually eliminates any prospect of a voluntary remand to the agency, because Limnia's APA challenge to DOE's treatment

---

[1] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

of its 2009 LG Program loan application *is* its assertion that DOE had arbitrarily refused to process Limnia's application in the absence of the application fee. (*See* Hr'g Tr. at 12:10–13 ("[O]ur position here, our perspective is we're here today only regarding denial of the fee waiver.").) Consequently, on remand, this Court ordered the parties to brief the merits of Limnia's LG Program APA claim, and the parties proceeded to address the issue of whether and to what extent DOE acted arbitrarily and capriciously in requiring that Limnia pay the application fee associated with the 2009 LG Program application. (*See* Minute Order of November 22, 2017.)

Before this Court at present are the parties' cross-motions for summary judgment on this issue. (*See* Mem. in Supp. of Defs.' Mot. for Partial Summ. J. ("Defs.' Mem."), ECF No. 72-1; Pl.'s Mot.) In its motion, DOE argues that the agency "reasonably decided to deny [Limnia's] LG Program application" because "Limnia did not pay the application fee" (Defs.' Mem. at 16), and it further maintains that the agency provided Limnia with an adequate explanation as to that decision, given that "[n]othing in the administrative record" suggests that DOE "agreed to specifically waive the application fee" with respect to Limnia's LG application (*id.* at 19). For its part, Limnia acknowledges that it "did not submit an application fee" (Pl.'s Mot. at 5), but it contends that DOE acted arbitrarily and capriciously in rejecting its application on this basis, because the agency had "failed" to "provide[] a reasoned explanation for its refusal to waive the application fee" (*id.* at 6), given that "[e]vidence in the record indicates that DOE consented to this waiver" (*id.* at 5). Limnia has also moved, in the alternative, "for limited discovery to supplement the record" if this Court finds "the administrative record insufficient to allow for judicial review." (*Id.* at 13.)

For the reasons explained below, Defendants' motion for partial summary judgment must be **GRANTED**, and Plaintiff's cross-motion for partial summary judgment must be **DENIED**.[2]  In short, the instant record indisputably establishes that the steps that are necessary to waive Limnia's application fee for the LG Program under DOE regulations were never taken, and DOE had no obligation to honor an alleged oral waiver of the application fee, nor did it need to provide any explanation for its rejection of Limnia's application other than informing Limnia (accurately) that the mandatory application fee had not been remitted.  Thus, DOE's rejection of Limnia's application was not arbitrary or capricious.  Moreover, because discovery is generally disfavored in APA cases and is also entirely unnecessary for the resolution of the instant cross-motions, Limnia's alternative motion for discovery is denied.  A separate Order consistent with this Memorandum Opinion will follow.

I.      **BACKGROUND**

        **A.  The Applicable LG Program Regulations**

        In 2005, Congress passed the Energy Policy Act of 2005, Pub. L. No. 109-58, § 1701–04, 119 Stat. 594, 1117–22 (codified at 42 U.S.C. §§ 16511–14), with the goal of promoting new and improved technologies that "avoid, reduce, or sequester air pollutants or anthropogenic emissions of greenhouse gases[,]" 42 U.S.C. § 16513(a)(1). To help make that goal a reality, Congress authorized DOE to "guarantee loans for certain environmentally-friendly, energy-efficient projects[,]" *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 48 (D.D.C. 2015), and specifically noted that

_____

[2] The parties have styled their summary judgment motions as "partial" cross-motions because Limnia's complaint contains claims regarding another loan application that DOE denied on its merits, and that portion of this case has been successfully voluntarily remanded to the agency.  (*See* Minute Order of August 7, 2017.).

4

"[p]roduction facilities for the manufacture of fuel efficient vehicles or parts of those vehicles, including electric drive vehicles and advanced diesel vehicles" would be eligible for support under the LG Program, *see* 42 U.S.C. § 16513(b)(8). Although federal statutes lay out the broad outlines and policy goals of the LG Program, Congress left it up to DOE to issue "final regulations" that provide details regarding how the agency would administer the LG Program. *Id.* § 16515(b). DOE promulgated its first version of those final regulations on October 23, 2007, and that version governed the administration of the LG Program as well as any applications that were submitted for processing through December 3, 2009. *See* 10 C.F.R. § 609 (2009).[3]

As relevant here, the then-existing LG Program regulations laid out a framework for how DOE would accept, process, and approve applications for loan guarantees under the LG Program. This application process would begin with DOE's decision to issue a "solicitation" that informed the public that it was "invit[ing] the submission of Pre-Applications or Applictions for loan guarantees for Eligible Projects." *Id.* § 609.3. In response to that solicitation, entities that wished to submit an application had to submit an assortment of "information and materials"—for example, "[a] completed Application form signed by an individual with full authority to bind the Applicant and the Project Sponsors[,]" *id.* § 609.6(b)(1), and "[a] description of the nature and scope of the proposed project[,]" *id.* § 609.6(b)(5)—and the entity was also required to arrange for "[p]ayment of the Application filing fee[,]" *id.* § 609.6(b)(2). DOE's regulations further reemphasized the application fee requirement by stating specifically that DOE

---

[3] This first iteration of the LG Program's regulations applies to the instant dispute. Thus, subsequent citations to Part 609 of Title 10 of the Code of Federal Regulations within this Memorandum Opinion reference the version of these regulations that was in force prior to December 4, 2009, unless otherwise noted.

would "not consider any Application complete unless the Applicant has paid the [filing] Fee[.]" *Id.* § 609.6(c).

Importantly, the regulatory scheme that DOE devised for applications to the LG Program also contained a provision that permitted deviations from the listed requirements under certain specified circumstances. *See id.* § 609.18. Namely, DOE could "authorize deviations *on an individual request basis . . . upon a finding* that such deviation is essential to program objectives and the special circumstances stated in the request make such deviation clearly in the best interest of the Government." *Id.* (emphasis added). Furthermore, the deviation provision plainly states that "[a] recommendation for any deviation *shall be submitted in writing* to DOE[,]" and that "[s]uch recommendation must *include a supporting statement*, which indicates briefly the nature of the deviation requested and the reasons in support thereof." *Id*. (emphasis added).

### B. Limnia's LG Program Application

In 2008, DOE issued a solicitation for applications to the LG Program related to "projects that employ innovative energy efficiency, renewable energy, and advanced transmission and distribution technologies[.]" (Joint Appendix ("J.A."), ECF No. 78-1, at 1.) This solicitation described the application process for any interested applicants, and with respect to the required application fee, it specified that "[a]ll applicants must remit twenty-five percent (25%) of the application fee . . . upon submission of their applications to DOE." (*Id.* at 3; *see id.* at 4 (reemphasizing that "[t]he appropriate proportion of the application fee . . . must be submitted to the U.S. Department of the Treasury [] by the appropriate dates . . . Applicants are advised to make proper

arrangements to assure that Treasury receives such fees on behalf of DOE").)[4]

In early February 2009, Limnia learned of the LG Program, but in its view, "the application fees were prohibitive." (*Id.* at 12.)[5]  Sometime thereafter, Limnia allegedly participated in "a conference call" with various DOE officials, and during that call, Limnia's representatives purportedly heard DOE Secretary Steven Chu "state[] his intention to waive the application fees" relating to the LG Program. (*Id.*)  Having "understood that Mr. Chu was waving the application fees" (*id.*), Limnia submitted an LG Program application to DOE on February 17, 2009, without including the fee (*id.* at 6).  In its application cover letter, Limnia specifically stated that it "understand[s] that Secretary Chu has changed the submission fee to be payable upon award[.]" (*Id.*; *see also id.* at 8, 10.)  A handwritten statement—"applic [sic] fee waived by secretary of DOE"—appears at the top of the copy of Limnia's cover letter contained within the administrative record. (*Id.* at 6.)

After submitting its application, Limnia eventually received a phone call from one of DOE's employees, informing the company that it "*did* need to pay the" application fee, and that "[it] needed to wire money" to the Treasury Department by February 26, 2009 (*id.* at 12 (emphasis added)), which was the deadline specified in the solicitation for project proposals (*id.* at 3).  However, according to Limnia, other DOE

---

[4] The instant record does not reveal exactly what fee Limnia was expected to submit alongside its application to the LG Program.  This uncertainty is primarily due to the fact that the amount of the LG Program application fee depended on the size of the loan guarantee that an applicant sought from DOE (*see* J.A. at 5), and the record does not specify the magnitude of the loan guarantee that Limnia sought. In general, it appears that the fee that was to accompany applications in response to the solicitation at issue here was between $18,750 and $31,250. (*Id.*)

[5] The administrative record in this case is mainly comprised of a series of emails between Limnia's management and DOE officials. (*See id.* at 6–25.)  This Court has necessarily relied chiefly upon these emails in discussing the factual circumstances related to DOE's rejection of Limnia's LG Program application.

employees had orally represented that there was "some flexibility on the time to wire the money." (*Id.* at 12.) Ultimately, the fee-related communications between Limnia and DOE broke down, and Limnia never submitted any part of the LG Program application fee to DOE or the Treasury Department. (*See id.* at 9–10, 12.) DOE rejected Limnia's application to the LG Program for this reason; in an e-mail dated April 9, 2009, DOE Senior Investment Officer Daniel C. Tobin wrote: "I regret to inform you that due to non-remittance of the required application fee, your application will not be reviewed. The application has been deemed non-responsive. Please note that this letter does not prejudice you from applying under future solicitations[.]" (*Id.* at 8.)

### C. Procedural History

DOE's rejection of Limnia's LG Program application gave rise, in part, to the instant litigation. In 2013, Limnia, alongside another plaintiff named XP Vehicles, filed a complaint in this Court against DOE and its Secretary. (*See* Compl., ECF No. 1.) Plaintiffs then amended the complaint to allege that both Limnia and XP Vehicles' applications for financial support under the LG Program and another program DOE administers (the Advanced Technology Vehicle Manufacturing ("ATVM") Program) were "improperly denied[.]" (Am. Compl. ¶ 119.) Both plaintiffs claimed "due process[,]" "equal protection[,]" and APA violations (*id.* ¶¶ 121–71), maintaining that DOE's denials were "impermissibly infected with political pressure" (*e.g.*, *id.* ¶ 169). This Court eventually dismissed all claims against the individual defendants in their official capacities (*see* Order, ECF No. 38, at 1); all of XP Vehicles' claims against DOE, *see XP Vehicles*, 118 F. Supp. 3d at 65–72; and all of Limnia's constitutional claims against DOE, *see id.* at 72–78. Thus, the scope of the case was reduced to the

two APA claims Limnia brought against DOE for its denial of Limnia's applications to the LG and ATVM Programs.

DOE then filed a motion for voluntary remand, which this Court granted. *See XP Vehicles, Inc. v. U.S. Dep't of Energy*, 156 F. Supp. 3d 185, 186 (D.D.C. 2016). (*See also* Order, ECF No. 56, at 1 (closing the case).) Limnia appealed the order remanding the case to DOE, and the D.C. Circuit reversed the grant of voluntary remand because DOE had suggested that it did not "intend[] to take further action with respect to the *original agency decision on review*." *Limnia*, 857 F.3d at 385–87 (emphasis in original). The court of appeals did not reach the merits of Limnia's APA claims; instead, it instructed this Court to "resolve Limnia's APA challenge[s] to the apparently denied 2009 loan applications" on remand, *id.* at 388, but also left open the possibility that this Court could effect a proper voluntary remand of the matter to the agency, if the agency committed itself to "reconsider[ing] th[e] 2009 loan applications" *and* if the Court "first" resolved what the Circuit perceived to be the threshold question of "whether Limnia has to pay the application fee associated with the 2009 Loan Guarantee Program application, or whether that fee was waived by the Department[,]" *id.*

With the case once again before this Court, DOE represented that it was genuinely willing to reconsider on voluntary remand the 2009 version of Limnia's application with respect to the ATVM Program, and as a result, this Court remanded that portion of this case to DOE and stayed any consideration of Limnia's claims regarding that application while DOE reconsidered its prior decision. (*See* Minute Order of August 7, 2017.) As to the dispute surrounding DOE's rejection of Limnia's

application to the LG Program—the merits of which relate simply and solely to whether or not DOE acted arbitrarily and capriciously when it insisted that Limnia pay the application fee under the circumstances alleged—the parties agreed to move ahead with summary judgment briefing and proceeded to file cross-motions for summary judgment. (*See* Defs.' Mem.; Pl.'s Mot.)

In its motion for summary judgment, DOE argues that it made the rational decision to reject Limnia's LG Program application in light of Limnia's undisputed failure to pay the required application fee, and it maintains further that the agency provided an adequate explanation to Limnia regarding the denial of Limnia's application. (*See* Defs.' Mem. at 6–8 (referencing DOE's email to Limnia dated April 9, 2009).) For its part, Limnia vigorously contends that, by virtue of Secretary Chu's oral comments, DOE did, in fact, grant Limnia a fee waiver, and because DOE did not explain why it rescinded that fee waiver in the April 9, 2009 email, DOE did not provide a sufficiently thorough and reasoned explanation for rejecting Limnia's application for support under the LG Program. (*See* Pl.'s Mot. at 5.) In the alternative, Limnia has requested that this Court provide it with the chance to supplement the administrative record by engaging in discovery to allow Limnia "to determine the Department of Energy's reason for refusing to honor the fee waiver." (*Id.* at 15.)

The parties' cross-motions are now fully briefed (*see* Reply in Supp. of Defs.' Mot. for Partial Summ. J. & Opp'n to Pl.'s Cross-Mot. for Partial Summ. J. or for Discovery ("Defs.' Reply"), ECF No. 75; Limnia's Reply in Supp. of its Cross-Mot. for Partial Summ. J. or for Disc. ("Pl.'s Reply"), ECF No. 77), and this Court heard oral arguments from both parties at a motion hearing on July 12, 2018.

## II.    LEGAL STANDARDS

### A.  Summary Judgment In APA Cases

The Federal Rules of Civil Procedure require a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, in an APA case, that summary judgment standard "does not apply because of the limited role of a court in reviewing the administrative record." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 301 F. Supp. 3d 50, 58 (D.D.C. 2018) (internal quotation marks and citation omitted). Indeed, in the APA context, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (internal quotation marks and citation omitted). Consequently, "[t]he entire case on review is a question of law, and only a question of law[,]" *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993), and a court must limit its review to the "administrative record" and the facts and reasons contained therein to determine whether the agency's action was "consistent with the [relevant] APA standard of review[,]" *Ho-Chunk, Inc. v. Sessions*, 253 F. Supp. 3d 303, 307 (D.D.C. 2017) (first alteration in original) (internal quotation marks and citation omitted); *see also Caiola v. Carroll*, 851 F.2d 395, 398 (D.C. Cir. 1988).

### B.  Arbitrary And Capricious Review

Under the APA, any person "adversely affected or aggrieved by agency action" has the right to seek "judicial review" of that agency action, 5 U.S.C. § 702, so long as the agency has taken "final agency action for which there is no other adequate remedy

in a court[,]" *id.* § 704.  The "reviewing court shall . . . hold unlawful and set aside

agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law[.]"  *Id.* § 706(2)(A).  This is a

"narrow" standard of review, and as such, the court is prevented from "substitut[ing] its

judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm

Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983).

Boiled to bare essence, the arbitrary and capricious review standard "requires

that an agency's decision be reasonable and reasonably explained."  *Nw. Corp. v. Fed.

Energy Regulatory Comm'n*, 884 F.3d 1176, 1179 (D.C. Cir. 2018).  An agency's action

must therefore "be upheld as long as the [agency] considered the relevant factors and

articulated a rational connection between the facts found and the choice made."  *Am.

Rivers v. Fed. Energy Regulatory Comm'n*, 895 F.3d 32, 45 (D.C. Cir. 2018) (internal

quotation marks and citation omitted); *see also ACA Int'l v. Fed. Commc'ns Comm'n*,

885 F.3d 687, 695 (D.C. Cir. 2018) ("Arbitrary-and-capricious review includes assuring

that the agency engaged in reasoned decisionmaking." (internal quotation marks and

citation omitted)).  Examples of arbitrary and capricious agency action include

instances where "the agency [] relied on factors which Congress has not intended it to

consider, entirely failed to consider an important aspect of the problem, offered an

explanation for its decision that runs counter to the evidence before the agency, or is so

implausible that it could not be ascribed to a difference in view or the product of

agency expertise."  *State Farm*, 463 U.S. at 43.  Moreover, and importantly, one of "the

most elementary precepts of administrative law" holds that "an agency has no choice

but to provide a reasoned explanation for its actions[.]"  *Policy & Research LLC v. U.S.

*Dep't of Health & Human Servs.,* 313 F. Supp. 3d 62, 83 (D.D.C. 2018) (citation

omitted), *appeal filed*, No. 18-5190 (D.C. Cir. June 15, 2018).  Thus, an agency must

provide a "clear enough" explanation of its actions "that its path may reasonably be

discerned."  *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (internal

citations and quotation marks omitted).

## III.  ANALYSIS

It is indisputable that the regulations governing DOE's LG Program required

applicants to remit an application fee before the agency would review the merits of a

given application, *see* 10 C.F.R. § 609.6(b)(2), (c), and it is equally indisputable that

Limnia did not pay that mandatory fee when it submitted its 2009 LG Program

application to DOE (*see* J.A. at 12, 20; *see also* Pl.'s Reply at 2 ("Limnia does not

dispute that it did not pay the fee.")).  Furthermore, there can be no doubt that DOE

provided an explanation for its rejection of Limnia's application; the record plainly

demonstrates that, on April 9, 2009, DOE informed Limnia in writing that its

"application will not be reviewed" and that the agency was taking this non-action "due

to non-remittance of the required application fee[.]" (J.A. at 8.)  Thus, what remains to

be resolved with respect to Limnia's contention that DOE acted arbitrarily and

capriciously in rejecting Limnia's application is whether DOE's decision, and its

explanation, were reasonable responses under the circumstances presented.

For the reasons explained below, it is clear to this Court that DOE acted entirely

rationally when it refused to process Limnia's LG Program application, because DOE

had not, in fact, granted Limnia any fee waiver, and having not approved any deviation

from the mandatory fee requirement, DOE had no obligation to provide reasons why the

agency had refused to honor the nonexistent waiver.  Put another way, Limnia has

conjured up a purported obligation of the agency (to waive the fee) that has not been

established, and its motion strangely contends that DOE's refusal to comply with this

unestablished duty, as well as DOE's failure to explain this refusal, is irrational agency

action in violation of the APA.  Limnia's contentions are meritless.

### A.   DOE Never Waived The Application Fee For Limnia's LG Program Application

Both parties recognize that the issue of whether DOE acted arbitrarily and

capriciously by rejecting Limnia's LG Program application turns entirely upon whether

DOE ever granted Limnia a fee waiver for its application.  (*See, e.g.*, Defs.' Reply at 11

("Plaintiff must first point to evidence suggesting that the agency in fact agreed to

waive the fee in the first place[.]"); Pl.'s Mot. at 8 (beginning with the contention that

"[t]he administrative record provides evidence . . . that the application fee had been

waived").)  That is, if DOE granted Limnia a valid fee waiver, then the agency's sudden

change of course without providing "a well-reasoned explanation for its decision" to do

so would constitute arbitrary and capricious action for APA purposes.  *Policy &*

*Research*, 313 F. Supp. 3d at 67.  On the other hand, if DOE did *not* grant Limnia a fee

waiver, then its rejection of Limnia's application was plainly well-founded and there

was nothing to explain—*i.e.*, there would have been no change in agency policy with

respect to Limnia's application, and DOE's April 9th statement sufficently articulates

that Limnia's failure to submit the mandatory application fee was the factor that

precipitated DOE's rejection of Limnia's LG Program application.  *See Safari Club*

*Int'l v. Zinke*, 878 F.3d 316, 331 (D.C. Cir. 2017).

Even the most cursory review of the applicable regulations and undisputed facts

in the administrative record clearly reveals that DOE never authorized the fee waiver that Limnia says it was entitled to with respect to the LG Program application at issue in this case. As explained above, the regulations that were in force at the time that Limnia submitted its application to participate in the LG Program mandated that applicants pay any "filing fee" that an open solicitation required when their application to the LG Program was submitted, 10 C.F.R. § 609.6(b)(2), and permitted deviation from such program requirements only under specified circumstances. Before any deviation from DOE's regulations could take place, an applicant had to submit a written recommendation that DOE deviate from its protocols, including a supporting statement describing the nature of the deviation and the justifications for that deviation. *See id.* § 609.18. Upon receiving such a request, DOE would often consult with other agencies, *see id.*, and in order to authorize the requested deviation, DOE was required to make "a finding" that such deviation was "essential to program objectives" and would be "in the best interest of the Government[,]" *id.* Thus, a deviation from the LG Program application requirements (such as the prescribed fee) was by no means an entitlement, nor could it be whimsically granted by an oral representation; rather, under the express terms of the applicable regulations, a deviation required a written request and justification by the applicant and approval from DOE based on specified findings. *See id.*

None of the mandated steps for deviating from the fee requirement occurred in the instant case. Limnia never provided "[a] recommendation . . . in writing to DOE" regarding a deviation, nor did it submit to DOE any "supporting statement" that described the "nature of the deviation requested and the reasons in support thereof[.]"

*Id.* The administrative record also lacks any "finding" by DOE that waiving the fee for Limnia's application to the LG Program would prove "essential to program objectives" or that "special circumstances" in this case made such a request in the best interest of the federal government. *Id.*; *see also* Black's Law Dictionary 749 (10th ed. 2014) (defining a "finding" or "finding of fact" in relevant part as "[a] determination by a judge, jury, or administrative agency of a fact supported by the evidence in the record"). There is no dispute that, despite the clear requirements for deviation that are spelled out in the regulations, neither Limnia nor DOE took *any* of the prerequisite steps to authorize a deviation (and thus a fee waiver) for Limnia's application to the LG Program.

Limnia adamantly asserts that DOE should be deemed to have waived the fee with respect to its LG Program application nevertheless. In this regard, Limnia points to various record documents that it says establish that the agency had deviated from the application fee requirement, but none of those documents demonstrates that the steps that are indisputably necessary to secure a waiver under DOE regulations were taken. For example, Limnia maintains that it participated in a conference call during which Secretary Chu "stated his intention to waive the application fees" (J.A. at 12; *see also* Pl.'s Mot. at 9), which Limnia says is confirmed by the typed statement in Limnia's own application cover letter to the effect that "Secretary Chu has changed the submission fee to be payable upon award" (Pl.'s Mot. at 9 (quoting J.A. at 6)). At most, this evidence represents Limnia's own (potentially mistaken) understanding of the status of the fee requirement; it neither amounts to an applicant "recommendation" that the fee be waived, 10 C.F.R. § 609.18, nor provides the requisite "statement" in support

of that deviation, *id.* Limnia's cover-letter representation also falls far short of being a "finding" by DOE, *id.*, and in the absence of any indication within the deviation rule that the Secretary has discretion to dispense with the deviation requirements, an *ipse dixit* regarding a waiver (even one that was purportedly announced by the Secretary himself) is manifestly insufficient.

The purported fee waiver also cannot rest upon the e-mail from one of Limnia's associates to staff members at DOE, stating that DOE's denial of Limnia's application for non-remittance of the required fee was "not in keeping with the discussion that was held . . . regarding the DOE's review of Limnia's submission prior to its requirement for fee submission." (Pl.'s Mot. at 9 (quoting J.A. at 17).) Again, while it appears quite clear from this email that Limnia *believed* that it had been excused from the application-fee requirement, such a belief does not make it so. And a statement from a Limnia associate articulating Limnia's understanding of a discussion that Limnia allegedly had with the agency about its mistaken belief that there was an authorized deviation from the fee requirement does not satisfy the regulations' clear deviation "prescription."

Limnia's other alleged smoking gun regarding DOE's grant of a fee waiver—the handwritten notation on Limnia's application cover letter stating "Appli. [sic] Fee waived by Secretary DOE" (*id.* (quoting J.A. at 6))—is similarly unavailing. To begin with, it is entirely unclear who made this notation. Limnia speculates that "someone at DOE read the typewritten statement that [the] Secretary [] had waived the application fee, circled Limnia's telephone number, called Limnia, and during that call[,] made the handwritten notation that Secretary Chu had waived the fee." (*Id.*) The notation itself

does not plainly establish that this chain of events actually occurred in the manner than Limnia articulates, but even so, this handwritten note merely reflects that someone somehow said the fee had been waived, and is not reasonably construed to be a "finding" regarding the fee waiver, much less the required finding that such a waiver would prove "essential" to the LG Program's objectives or that it is in the best interests of the federal government under the deviation rules.  (*See* J.A. at 6, 12, 17.)

The best that Limnia can do to support its fee-waiver position is to note that "[t]he cover letter of its application states that Limnia 'understands that Secretary Chu has changed the submission fee to be payable upon award[,]'" (Pl.'s Mot. at 12 (quoting J.A. 6)), and to insist that Limnia thereby successfully submitted to DOE "a determination by the Secretary in his discretion to undertake a deviation" (*id.* (quoting 10 C.F.R. § 609.16 (2018)); *see also* Pl.'s Reply at 4–5).  There are multiple flaws with this argument, not the least of which is that Limnia's own statement is, quite plainly, not a determination by the Secretary.  *See* 10 C.F.R. § 609.16(a)(2) (2018).  But it suffices here to point out that, in any event, Limnia's argument in this regard relies on a *new* version of DOE's regulations—*i.e.*, one that was not in effect at the time of the determination at issue in this case.  It may well be true that *today* DOE can deviate from its regulations if (1) an Applicant submits to DOE "a determination by the Secretary in his discretion to undertake a deviation[,]" *id.* § 609.16(a)(1)(iii) (2018), and (2) there exists "[a] finding by the Secretary that such deviation supports program objectives and the special circumstances stated in the request make such deviation clearly in the best interest of the Government[,]" *id.* § 609.16(a)(2) (2018), but such was *not* the case under the regulations that were in force at the time DOE denied Limnia's LG Program

application (*see* n.3, *supra*).  Instead, and as explained above, the then-existing

deviation regulation required a written recommendation regarding any proposed

deviation; a statement in support of that deviation; and a finding by the Secretary that

such a deviation served both the objectives of the LG Program and the interests of the

federal government.  *See* 10 C.F.R. § 609.18 (2009).  Limnia's statement in its cover

letter that it "understands that Secretary Chu has changed the submission fee to be

payable upon award" does not satisfy these requirements.

### B. DOE's Rejection Of Limnia's LG Program Application Was Reasonable And Sufficiently Explained

Because DOE did not waive the fee for Limnia's application to the LG Program,

there can be no question that DOE's treatment of Limnia's application was entirely

appropriate under the APA.  Consistent with the regulations' statement that "DOE will

not consider any Application complete unless the Applicant has paid the [application

fee]," *id.* § 609.6(c), DOE refused to process Limnia's application because Limnia

failed to remit the fee (*see* J.A. at 8).  This was a perfectly rational choice under the

circumstances, *see Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of

individuals are affected, it is incumbent upon agencies to follow their own

procedures."); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 335 (D.D.C. 2018) ("[E]ven in

areas of expansive discretion, agencies must follow their own existing valid

regulations." (internal quotation marks and citation omitted)).  And, indeed, it is only

conceivably arbitrary action by DOE if one *assumes*, as Limnia does, that DOE granted

Limnia a fee waiver despite the fact that the agency's deviation regulations were not

followed.

Thus, by stating simply that Limnia's application was rejected "due to non-

remittance of the required application fee" (J.A. at 8), DOE unquestionably "articulate[d] a satisfactory explanation for its action[,]" *State Farm*, 463 U.S. at 30; *see, e.g.*, *Vernal Enters., Inc. v. Fed. Commc'ns Comm'n*, 355 F.3d 650, 661 (D.C. Cir. 2004) (approving a denial of a refund request where that denial accorded with the agency's internal fee-refund policy and where "the Commission's order . . . "explain[ed] why the fee-refund policy . . . required denial of Vernal's request"). Furthermore, DOE's explanation for its rejection of Limnia's application had the added benefit of being entirely true. *Cf. New England Power Generators Ass'n, Inc. v. Fed. Energy Regulatory Comm'n*, 879 F.3d 1192, 1200–01 (concluding that, because the agency 's decision was supported by the record evidence and reasonably explained, the agency did not act arbitrarily or capriciously).

## C. Limnia's Discovery Request Is Baseless

Apparently sensing the meritless nature of its current fee-waiver contentions, Limnia has requested that, as an alternative to granting it summary judgment, this Court should authorize "limited discovery to determine the Department of Energy's reason for refusing to honor the fee waiver[.]" (Pl.'s Mot. at 15.) Unfortunately for Limnia, this request fares no better than its underlying claim.

It is well established that, to seek discovery in the context of an APA case, the plaintiff must make "a significant showing . . . that [the plaintiff] will find material in the agency's possession indicative of bad faith or an incomplete record[.]" *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d at 487–88. But, here, Limnia has offered nothing more than rank speculation about DOE's motives based on Limnia's own (unproven) assumption that the agency actually conferred a fee waiver through Secretary's Chu's comments and then inexplicably rescinded it. (*See* Pl.'s Mot. at 16

("Defendants are the only party with access to the information regarding DOE's true reason for refusing to honor its fee waiver; the administrative record contains no contemporaneous evidence on this point.").) Limnia's mistaken belief that the agency had granted it a fee waiver, however earnest, is an insufficient basis upon which to conclude that Limnia should be allowed to explore *why* the administrative record makes no mention of the agency's fee-waiver obligation, and this is especially so when the most obvious reason for the lack of record evidence regarding any fee waiver *is that no such waiver exists*. What is more, if there is any bad faith to be found, this Court concludes that it is most likely manifest in Limnia's own decision to pursue its frivolous contention that DOE somehow arbitrarily abandoned a commitment to process Limnia's LG application sans the mandatory fee.

Thus, far from demonstrating that discovery is warranted, Limnia's request for further factfinding merely exposes the extremely thin reed upon which Limnia's claim of arbitrary and capricious action rests.

## IV.    CONCLUSION

DOE's regulations plainly required Limnia to submit an application fee alongside its application for an LG Program loan, and neither Limnia nor DOE undertook any of the steps that the regulations require in order to effect a waiver of that application-fee mandate. This Court finds that DOE never granted Limnia a fee waiver, and thus, the agency did not act arbitrarily and capriciously when it refused to process Limnia's application for failing to remit the required fee or when it explained that it was rejecting Limnia's application "due to non-remittance of the required application fee[.]" (J.A. at 8.) As a result, and as set forth in the accompanying Order, DOE's motion for

partial summary judgment must be **GRANTED**, and Limnia's cross-motion for partial summary judgment must be **DENIED**. And with the exception of DOE's pending review of Limnia's ATVM application on voluntarily remand, this matter is now over; no discovery is warranted or authorized.


DATE:  September 28, 2018                           *Ketanji Brown Jackson*
                                                    _____
                                                    KETANJI BROWN JACKSON
                                                    United States District Judge